IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KELLIE JO ECKER,                                    CV 07-6311-MA

        Plaintiff,                                OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

        Defendant.

Kathryn Tassinari
Robert Baron
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
(503) 686-1969

        Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158

1 - OPINION AND ORDER

DAVID J. MORADO
Regional Chief Counsel
DAVID J. BURDETT
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2522

      Attorneys for Defendant


MARSH, Judge.

     Plaintiff Kellie Jo Ecker seeks judicial review of the Commissioner's final decision  denying her August 17, 2004, application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.[1]

     Plaintiff alleges she has been disabled since August 17, 2004, because of obesity, left foot drop, bilateral degenerative joint disease of the knee, and severe adjustment disorder with depression and anxiety.  Plaintiff's disability claim was denied initially and on reconsideration.  The Administrative Law Judge (ALJ) held a hearing on April 25, 2007, at which plaintiff, her mother, and a vocational expert testified.  on May 25, 2007, the ALJ issued a decision that plaintiff was not disabled.  On August 31, 2007, the Appeals Council denied plaintiff's request for further review.  The ALJ's decision, therefore, was the Commissioner's final decision for purposes of judicial review.

---

[1] Plaintiff also applied for disability insurance benefits under Title II of the Social Security Act but voluntarily withdrew that application.

2 - OPINION AND ORDER

Plaintiff seeks an Order from this court reversing the Commissioner's final decision and remanding the case either for an immediate payment of benefits or for further development of the record regarding plaintiff's mental impairments.  For the following reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this action.

<u>**THE ALJ'S FINDINGS**</u>

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  <u>Bowen v. Yuckert</u>, 482 U.S.137, 140 (1987).  <u>See also</u> 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability.

At Step Two, the ALJ found plaintiff suffers from a history of surgery with complications, obesity, foot drop, bilateral degenerative joint disease of the knee, history of depression/ adjustment disorder, and history of methamphetamine use, that are severe impairments under 20 C.F.R. §416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

3 - OPINION AND ORDER

At Step Three, the ALJ found plaintiff's impairments do not meet or equal a listed impairment. 20 C.F.R. §416.920(c). The ALJ found plaintiff has the residual functional capacity to perform light work that includes the ability to lift and carry 10 lbs frequently and 20 lbs occasionally, to sit at least six hours in an eight hour day, to stand for 20 minutes at a time for at least two hours each day as long as she is able to change positions, to climb ramps and stairs occasionally, and to crouch and bend over occasionally. She should not climb ladders, ropes, and scaffolds, and she should avoid fumes, smoke, and other such hazards. She may need to use a cane.

At Step Four, the ALJ found plaintiff is unable to perform her past relevant work, which includes medium semi-skilled work as a playground aide and light semi-skilled work as a clerk.

At Step Five, the ALJ found plaintiff is able to perform a full range of light exertion work, including small products assembler, food/beverage order taker, and wire worker.

Consistent with the above findings, the ALJ found plaintiff was not under a disability and denied her claim for benefits.

## **LEGAL STANDARDS**

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet

this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to

allow for proper evaluation of the evidence. <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert</u>. <u>denied</u>, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981).

## <u>ISSUES ON REVIEW</u>

Plaintiff contends the ALJ erred in (1) failing to give clear and convincing reasons for rejecting plaintiff's testimony, (2) failing to credit the lay witness testimony of plaintiff's mother, (3) failing to give controlling weight to the opinion of an examining psychologist, and (4) failing to meet his burden of proving plaintiff could perform other work in the national economy.

## <u>RELEVANT RECORD</u>

### <u>Plaintiff's Evidence</u>

The following evidence is drawn from plaintiff's testimony, her disability application, and her work and earnings history reports.

Plaintiff was 40 years old on the date of the Commissioner's

6 - OPINION AND ORDER

final decision denying her claim for benefits.  She has a high school diploma with two-three years of college.

Plaintiff has not worked for pay since October 2004.  She previously work in a delicatessen and did yard work for a school district.

Plaintiff is 5'11" tall and weighs 330 lbs.  She states she is unable to work because of arthritis in her knees, drop foot, and blood clots in her legs, all of which cause her to fall frequently.  She is fearful of heavy bleeding if she were to fall at work because she takes blood thinning medication.

Plaintiff states she can only stand for 20 minutes before needing to sit down and relax for hours with her feet elevated. If she sits down for too long, however, her back hurts.

Plaintiff also states she becomes frustrated and depressed because of her physical impairments and for the past 18 months she will stay in bed, crying a lot, often for "two days, probably three days" a week.  She has difficulty falling asleep at night because of anxiety.  She has panic attacks that cause her to freeze up and shake.  She has "bad days" about five days a week.

Plaintiff does her own laundry and makes the bed but has to sit down frequently.  She has difficulty loading and unloading the washing machine because she has to bend down.  She is often unable to complete household tasks.

7 - OPINION AND ORDER

## Lay Witness Testimony

Plaintiff's mother testified that plaintiff lives with her
and her husband.  Since 2004, plaintiff's problems have related
simply to trying to survive.  Plaintiff has been unable to bounce
back from a severe illness in 2002 that resulted in a lengthy
hospitalization.  She has difficulties with her legs and back and
becomes so tired that she goes to bed.  She stays in bed more
than she is up and around.  Plaintiff cannot get motivated
because of her physical impairments, which have led to mental
impairments.

Plaintiff has on occasion been able to volunteer at the Elks
Lodge during holiday seasons, working with children.

Plaintiff complains a lot about pain in her knees and back,
and her feet swell up once or twice a week.  Plaintiff has always
been sensitive about her weight.  Her weight makes it difficult
for her to move around.

Plaintiff is now more interested in getting help for her
mental health.  She still tries to avoid meeting people.  She
does go to the grocery store because she is able to ride around
in a cart.  She does not like shopping in department stores.
Plaintiff cries frequently but on an unpredictable basis for 30-
40 minutes at a time.

**Relevant Medical Evidence**

**Treating Physicians/Mental Health Providers.**

<u>University of Cal. Medical Center:  July 2002 - Feb. 2003</u>.

Plaintiff was admitted on July 20, 2002, complaining of abdominal pain that had lasted for a year.  On examination she had a large pelvic mass.  She remained in hospital for a month, during which time, she underwent a hysterectomy and bilateral salpingo-oophorectomy (removal of ovaries and fallopian tube), and was treated for sepsis, acute renal failure, a wound opening, anemia, and respiratory failure.  She was discharged in stable condition on August 21, 2002.

On September 1, 2002, plaintiff was readmitted to the hospital after complaining of right flank pain and painful urination.  She was treated for pyelonephritis (urinary tract infection) and depression.  She was discharged on September 10, 2002, at which time she was obtaining good relief from pain medications and was on a regular diet.

A September 27, 2002, follow-up exam showed plaintiff was doing better, but she had developed a persistent right foot drop that was not present before the recent surgery.  She was using a walker and occasionally a wheelchair to get around.

In December 2002, during a follow-up visit, plaintiff was diagnosed with gallstones, which accounted for her complaints of

right upper quadrant pain.

In February 2003, plaintiff's wound from her July 2002 operation was nearly closed.  Plaintiff continued to complain of back pain and right foot drop.  She was referred to physical therapy.

<u>Sundeep Desai M.D. - Internist:  Sep. 2002 - May 2003</u>.

In September 2003, plaintiff first established care with Dr. Desai.  She was taking coumadin as a blood thinner and had abdominal pressure but was much better following her operation the year before.  She was "generally well-appearing" and "in no acute distress."  Her depression was controlled by Prozac.

In November 2003, plaintiff complained of pain on her right side as well as back pain that was stable.  She was on disability but was able to do desk work.

In early December 2003, plaintiff was examined preparatory to dental surgery.[2]  Plaintiff complained of gaining weight and being more depressed.  She was only able to walk short distances because of back pain.  She was crying more and not enjoying things as much as she used to.  Her abdominal pain was improving.  Dr. Desai increased her Prozac dosage.

In mid-December 2003, her depression was improved, and she

_____

[2] Throughout the medical reports, references are made to plaintiff's dental problems, but they are not a factor in the disability evaluation.

10- OPINION AND ORDER

lost a little weight.  She continued to have right leg numbness from the right foot drop.

In January 2004, plaintiff's depression had continued to improve and was well-controlled.  She had lost some weight and was able to walk a mile and carry a sack of groceries up one flight of stairs.

Mircea S. Rachita, M.D. - Internist.

In August 2004, plaintiff established medical care with Dr. Rachita after she moved to Oregon from California.  On her initial examination, plaintiff gave a history of methamphetamine abuse before her major surgery in July 2002, but had not used drugs since then.  On examination, Dr. Rachita diagnosed high cholesterol, obesity, major depression fairly well-controlled by Prozac, and chronic pain syndrome, mostly in her back and knees, for which she was prescribed Tylenol PM.  She weighed 324 lbs and was encouraged to lose weight.

In October 2004, plaintiff complained that she was feeling sad.  Dr. Rachita noted she was on "a fair dose of Prozac" and he offered her a second medication which plaintiff declined.  She was encouraged to establish care with the County Mental Health Department.  She was again strongly urged to lose weight to control her morbid obesity.

In January 2005, during a visit for dental pain from tooth

abscesses, Dr. Rachita again urged plaintiff to lose weight. Plaintiff's gait and balance were good.

In May 2005, plaintiff complained of hurting all over and being unable to lose weight. Dr. Rachita noted plaintiff's obesity was the most important of all her problems and urged her to join Weight Watchers. Plaintiff's medication was switched from Prozac to Wellbutrin because plaintiff complained that she gained weight while taking Prozac. Plaintiff agreed to seek help at the County Mental Health Department for her depression.

In August 2005, plaintiff complained of leg pain and ear bleeding. She had fallen in July and sought emergency room treatment. She was placed in a knee brace. The knee pain from the fall had improved by the time of her visit in August. Dr. Rachita noted plaintiff probably tripped and fell because of her right foot drop. She was responding to conservative treatment. The bleeding in her ear might have been caused by her use of the blood thinner (Coumadin), which she was taking as an anti-coagulant. Plaintiff refused to take the Wellbutrin as prescribed and continued taking Prozac. She also refused to participate in Weight Watchers. Dr. Rachita began considering whether plaintiff had a histrionic personality disorder such as "La Belle Indifference," *i.e.,* "a lack of concern for the perception of others of one's disability." Dr. Rachita again

recommended that plaintiff establish mental health care with the County Mental Health Department.

In September 2005, plaintiff's chief complaint was knee pain. Dr. Rachita diagnosed bilateral knee degenerative arthritis that was not responding well to conservative treatment, and was probably related to her obesity. Plaintiff had by then established care with the County Mental Health Department but had not joined Weight Watchers.

In February 2006, plaintiff's chief complaint was joint pain. Dr. Rachita continued conservative treatment for her knee pain and noted plaintiff should lose at least 100 lbs. After plaintiff agreed to seek treatment, she did well taking Prozac for her major depression. Dr. Rachita had plaintiff sign a pain contract in which she agreed to be compliant with narcotic prescriptions, which were not good for her overall. Dr. Rachita noted plaintiff "would be better off" not taking narcotics.

In November 2006, plaintiff was depressed. She continued to have knee pain and suffer from a mixed depression/anxiety disorder. She admitted she was not taking care of herself, procrastinating, and not losing weight. She said her "downfall was ice cream." She did not comply with the doctor's request that she go to a weight loss clinic and had gained 12 lbs. She continued to have knee pain and was taking Vicodin.

13- OPINION AND ORDER

In March 2007, plaintiff complained of depression and expressed a desire to lose weight.  She was again encouraged to attend a weight loss clinic.  Dr. Rachita believed plaintiff's depression was her most urgent problem at the time and urged her again to get treatment at the County Mental Health Department. Dr. Rachita also repeated her recommendation that weight loss would be most beneficial for plaintiff's continuing knee pain.

In June 2007, Dr. Rachita reviewed a report prepared by psychologist Judith Eckstein, Ph.D. (see <u>infra</u>), and agreed with her conclusions regarding plaintiff's ability to work. Dr. Rachita opined plaintiff would have difficulty maintaining employment because of her depression and that plaintiff's morbid obesity, moderate knee osteoarthritis, and right peroneal paralysis would limit plaintiff's endurance and preclude her from maintaining a regular work schedule.  Because plaintiff takes Coumadin as a blood thinner, Dr. Rachita recommended that plaintiff avoid any situation where she might fall or injure herself.  Nevertheless, Dr. Rachita urged that an Occupational Medicine Specialist evaluate plaintiff's workplace limitations.

<u>Douglas County Mental Health Department</u>.

In September 2005, plaintiff contacted the County Health Department to set up a plan for mental health counseling.  A brief history was given and a risk assessment was undertaken. Plaintiff was tearful and anxious, stating that "they keep

14- OPINION AND ORDER

telling me to come here for depression." She expressed "feelings of worthlessness." She was diagnosed with a depressive disorder due to a medical condition. A service plan was developed to help plaintiff with coping and depression. Thereafter, plaintiff cancelled her first appointment after intake because she was uncertain of her coverage under the Oregon Health Plan. She made no further contact with the Department.

**Examining Physicians/Psychologists.**

Michael J. Krnacik, M.D., Ph.D. - Orthopedic Surgeon.

In October 2005, Dr. Krnacik examined plaintiff at Dr. Rachita's request. He diagnosed moderate bilateral knee arthritis, more on the left than the right, with numerous medical problems, including morbid obesity. He recommended weight loss of at least 150 lbs, non-impact bearing exercises such as swimming and biking, and straight leg-raising exercises.

Kurt Brewster, M.D. - Internist.

In November 2005, Dr. Brewster examined plaintiff on behalf of Disability Determination Services. Plaintiff was cooperative and her effort was satisfactory. Dr. Brewster reviewed medical records and took a medical history from plaintiff. He noted plaintiff had breathing difficulties that have improved, although her maximum exercise tolerance was walking one block. She described pain from her surgeries.

Plaintiff described her daily living activities as including taking care of her personal grooming needs, doing dishes and sweeping.  She was able to load the washer and dryer but could not lift the laundry basket by herself.  She watched five hours of television each day and read for one hour.  She walked one-two blocks at night and drove about three miles per day.

During the examination, plaintiff walked without any limp or obvious distress.  She was able to get on and off the examining table easily but quickly complains of back pain.  She removed her shoes without bending at the waist.

Plaintiff demonstrated mildly elevated physiologic signs (blood pressure, pulse) that suggested her "exercise tolerance" was greater than she stated.  She had persistent foot drop and ankle strength discrepancies were present.  There was no evidence of fibromyalgia.  Dr. Brewster opined her depression might impact her tolerance and perception of pain and fatigue.

Based on his examination, Dr. Brewster opined plaintiff could stand or walk with frequent breaks about six hours a day. She should use an assistive device because of weakness and gait instability.  She was able to lift 20 lbs occasionally and 10 lbs frequently.  Her range of motion was essentially normal.  She had no manipulative limitations but had height limitations because of her gait instability.

16- OPINION AND ORDER

<u>Judith Eckstein, Ph.D.  - Licensed Psychologist</u>.

Dr. Eckstein examined plaintiff at the request of her attorney.  Plaintiff provided a personal, work, and medical history.  She used to smoke and used methamphetamine.  She had no current alcohol or recreational drug use.  Plaintiff described a sedentary lifestyle, staying home watching TV.  She used to garden and does some arts and crafts.  She was able to attend to her personal hygiene.  She did little cooking.  She did chores but she would feel sore all over and her feet would swell.  She attended church and went to the Elks Lodge for Friday night dinners and other events.

Dr. Eckstein noted plaintiff's obesity.  She walked slowly with a cane and was unable to climb stairs but she had no signs of distress.  Her thought process was logical and coherent and she was fully oriented.

Plaintiff described her depression as 10 on a scale of 1-10 because she was overwhelmed and unable to do much with her life.  She denied low self-esteem.  She described panic attacks that occurred twice a month on average.  She was often anxious in public places and had some difficulty with concentration and memory.

On an informal IQ test, plaintiff showed more concern with her immediate world.  She had difficulty counting backwards from 100 by 7's but was able to do the same from 20 by 3's.

Dr. Eckstein opined plaintiff's responses suggested a
"defensiveness about particular shortcomings" and "an
exaggeration of some problem areas."  Dr. Eckstein opined
plaintiff "tended to endorse items that present an unfavorable
impression or represented extremely bizarre or unlikely symptoms
that indicate a 'cry for help.'"  Dr. Eckstein did not question
the validity of the test results but she noted the
"interpretative hypotheses presented should be reviewed with
caution."

In summary, Dr. Eckstein opined plaintiff had an "extremely
high level of depression" based on self-reporting and testing
that may limit her otherwise average cognitive functioning.  She
diagnosed plaintiff as having the following mental impairments:
"Adjustment Disorder with Depression and Anxiety, Severe;" "Rule
Out Somatization Disorder;" and "Borderline Personality Traits
Disorder."  Dr. Eckstein assigned a GAF score of 50 (serious
impairment of social, occupational, or school functioning).

Dr. Eckstein also completed a questionnaire indicating
plaintiff had the following moderate limitations:  understanding,
remembering, and carrying out detailed instructions; sustaining
an ordinary routine without special supervision; working with or
near others without being distracted by them; completing a normal
workday and workweek without interruptions from psychologically-
based symptoms; performing at a consistent pace without an

18- OPINION AND ORDER

unreasonable number and length of rest periods; and responding appropriately to changes in the work setting.  She opined plaintiff had the following marked limitations:  maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within reasonable tolerances; and accepting instructions and responding appropriately to supervisors.

Dr. Eckstein based her opinion on plaintiff's self-report, the clinical interview, the Personal Assessment Inventory (PAI) testing, and her mental status exam.

**Consulting Physicians/Psychologists.**

Sharon Eder, M.D. - Internist.
Martin Lahr - M.D. - Pediatrics.

Based on their review of plaintiff's medical records, these physicians opined that plaintiff was able to engage in substantial gainful activity subject to the following limitations as to her Residual Functional Capacity:  lifting 20 lbs occasionally and 10 lbs frequently; standing, walking, and sitting for six hours in an eight hour workday with normal breaks, unlimited pushing and pulling, occasional climbing and crouching, and avoidance of concentrated exposure to fumes.

Dr. Eder opined plaintiff's subjective complaints were only partially credible.  The evidence suggested plaintiff's limitations were consistent with her "deconditioning" rather

19- OPINION AND ORDER

than her physical impairments.  Dr. Lahr opined plaintiff's
obesity and right foot drop were severe impairments that did not
meet any listing, and that the evidence supported a finding that
plaintiff can perform and sustain light work.

<u>Paul Rethinger, Ph.D. - Psychologist</u>.
<u>Robert Henry, Ph.D. - Psychologist</u>.

Based on their respective reviews of plaintiff's medical
records, Dr. Rethinger and Dr. Henry opined plaintiff suffers
from non-severe depression that was treated with medications and
resulted in mild limitations as to activities of daily living.

### ANALYSIS

### 1.  **Rejection of Plaintiff's Testimony**.

Plaintiff contends the ALJ failed to give clear and
convincing reasons for not crediting her testimony regarding the
severity of her mental and physical impairments.

A claimant who alleges disability based on subjective
symptoms "must produce objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged. . . .'"  <u>Bunnell v.
Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C.
§ 423(d)(5)(A) (1988)).  <u>See</u> <u>also</u> <u>Cotton v. Bowen</u>, 799 F.2d 1403,
1407-08 (9th Cir. 1986).  The claimant need not produce objective
medical evidence of the symptoms or their severity.  <u>Smolen v.
Chater</u>, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying

20- OPINION AND ORDER

impairments could cause the pain complained of and there is not any affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283. To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

Here, there is no evidence that plaintiff is a malingerer. The ALJ, however, found plaintiff's statements regarding the intensity, persistence, and limiting effect of her physical impairments were "not entirely credible." In reaching that conclusion, the ALJ cited normal findings in a multitude of medical tests, most of which are relevant to plaintiff's recovery from her abdominal surgery in 2002. In addition, he relies on the report of examining physician Kurt Brewster, M.D., regarding plaintiff's residual functional capacity, which calls into

question plaintiff's testimony regarding the severity of her impairments.  The ALJ also found plaintiff's daily activities, such as bathing, dressing, brushing her hair, washing dishes, sweeping the floor, and loading the washer and dryer, were inconsistent with any disabling physical impairment.

In addition, the medical record reflects that plaintiff's physical activities are limited in part because of her obesity and the depression she suffers in part because of her obesity, that keep her in bed much of the time.  In that regard, the record reflects plaintiff stubbornly and persistently refused to follow the advice of her primary physician, Dr. Rachita, to join Weight Watchers and to seek mental health care.  The ALJ noted plaintiff's penchant for not following medical advice as a reason for not crediting her testimony.

The ALJ also noted plaintiff told Dr. Eckstein that before the onset of her depression and physical problems in 2000, she "used to be a work horse," yet she had no earnings for four of the prior seven years.  The record also reflects she had relatively inconsequential earnings in the other three years.

On the record as a whole, I conclude the ALJ gave clear and convincing reasons for questioning plaintiff's credibility and rejecting her testimony regarding the extent of her physical and mental limitations on that basis.

2.    <u>**Rejection of Testimony by Plaintiff's Mother**</u>.

The ALJ may reject the testimony of a lay witness only if he gives germane reasons for doing so.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996).  Plaintiff contends the ALJ failed to give such reasons when he rejected the evidence presented by her mother regarding plaintiff's lack of daily physical activity.

The ALJ rejected testimony by plaintiff's mother that plaintiff was inactive and spent much of her day in bed because plaintiff failed to present any evidence establishing a cause for the inactivity.  The ALJ opined that plaintiff "has no reason to be active.  She lives with her parents.  She does not have to do very many chores, thereby allowing her to watch television during the day."  As such, the ALJ opined that plaintiff was inactive because she had no reason to be otherwise.

On this record, and in light of the ALJ's finding regarding plaintiff's credibility, which I have sustained, I find the ALJ gave germane reasons for rejecting the lay witness testimony.

3.    <u>**Rejection of Treating Physician Opinions**</u>.

Plaintiff alleges the ALJ erred in rejecting the opinion of examining psychologist, Judith Eckstein, Ph.D, that plaintiff suffers from a high level of depression.  As noted, Dr. Eckstein opined that plaintiff suffered from "Adjustment Disorder with Depression and Anxiety, Severe;" "Rule Out Somatization Disorder;" and "Borderline Personality Traits Disorder."  Based

on that diagnosis, Dr. Eckstein assigned a GAF score of 50
(serious impairment of social, occupational, or school
functioning).

In Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998),
the Ninth Circuit set forth the weight to be given to the
opinions of treating doctors:

> The opinions of treating doctors should be
> given more weight than the opinions of
> doctors who do not treat the claimant. Where
> the treating doctor's opinion is not
> contradicted by another doctor, it may be
> rejected only for clear and convincing
> reasons supported by substantial evidence in
> the record.  Even if the treating doctor's
> opinion is contradicted by another doctor,
> the ALJ may not reject this opinion without
> providing specific and legitimate reasons
> supported by substantial evidence in the
> record.  This can be done by setting out a
> detailed and thorough summary of the facts
> and conflicting clinical evidence, stating
> his interpretation thereof, and making
> findings.  The ALJ must do more than offer
> his conclusions.  He must set forth his own
> interpretations and explain why they, rather
> than the doctors', are correct.

(Internal Citations Omitted).  In turn, "the opinions of
examining physicians are afforded more weight than those of
non-examining physicians." Orn v. Astrue, 495 F.3d 625, 632 (9th
Cir. 2007).  The opinions of treating physicians should be
credited as true if the ALJ fails to provide clear and convincing
reasons for rejecting them.  See Smolen v. Chater, 80 F.3d 1273,
1992 (9th Cir. 1996).

The ALJ rejected Dr. Eckstein's opinion because it was based on "a one day assessment" of [plaintiff] and "does not merit much weight" because plaintiff's "severe depression was based on her self-report." Dr. Eckstein acknowledged that her evaluation of the severity of plaintiff's depression was based on plaintiff's self-report, that plaintiff tended to exaggerate some problems areas, and that her interpretation of plaintiff's test results should be "viewed with caution." Finally, as noted earlier, plaintiff was not entirely candid with Dr. Eckstein regarding her level of work activity in the seven years before she first asserted a claim for disability benefits.

On this record, I conclude the ALJ gave clear and convincing reasons for rejecting Dr. Eckstein's opinion regarding the severity of plaintiff's depression.

## CONCLUSION

For all the reasons stated above, the court **AFFIRMS** the final decision of the Commissioner and **DISMISSES** this action.

IT IS SO ORDERED.

DATED this 27 day of October, 2008.


                          /s/  Malcolm F. Marsh
                            MALCOLM F. MARSH
                       United States District Judge



25- OPINION AND ORDER